Thank you, Your Honor. My name is Jeffrey Angel. I'm an attorney out of Bozeman, Montana, and my co-counsel, Alan Blakely, I will reserve a bit of time for rebuttal for him. This is the case of Tammy Brugette v. Safeco National Insurance Company, which was filed as a class action. The case proceeded through quite a long history of discovery and then through a jury trial. And on the second day of jury trial, at the close of the plaintiff's case in chief, the defendant, Safeco, made a single motion for a directed verdict as to punitive damages. I think a review of the transcript will show that the motion was limited in that Donald Malloy made this quote. He said, I think there's enough evidence in this case to go to the jury on leveraging. I think they can argue reasonably from the facts that there was leveraging, that Safeco was making an effort. There's the evidence that came from the people at Safeco. They conceded in testimony, and I think arguably from the evidence, that they weren't about to pay the advance on the medicals unless she gave up those things listed in the exhibit. They attempted to commit a statute. That was before he heard the evidence? That was at the close of the plaintiff's case in chief, and that was during discussion on the motion of whether or not he was going to dismiss the single claim of punitive damages, not the case in its entirety. There was a short break, and he returned and granted a directed verdict on all counts and dismissed the case. So is that something he said from the bench as you were arguing? Correct. And then he changed his mind and granted the directed verdict? Yes. And the statements go on in the discussion about the punitive damages, and he said, the use of that form as a matter of law, if it had been followed, would in fact be a violation of the statute on leveraging. They attempted to commit a violation of the statute. Montana has a mandatory insurance policy statute which requires everybody to cover a minimum amount of insurance. We also have what's called the Unfair Trade Practices Act, which requires insurers to do several things. One of them, subsection 6, requires insurers to act in good faith. And the statute reads that they must attempt in good faith to effectuate a prompt, fair, and equitable settlement. Subsection 13 requires them essentially not to leverage. It says that they must not fail to promptly settle claims if liability has become reasonably clear under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage. Now, in 1997, the Montana Supreme Court came out with a decision called the Ridley decision. And in Ridley, the Supreme Court said that if liability is reasonably clear, because that is a prerequisite for both the good faith requirement under 6 and subsection 13, as long as liability is reasonably clear, and it was a conceded fact in this case, they must fulfill those duties. And the duties are they cannot – what Ridley said is they have to make the advance payment of medical expenses as long as they're reasonable, caused by the accident, and necessary. Okay. Well, how do the issues then shape up where – I mean, here, as I understand it, after Ms. Burgett declined to sign the form, they then paid most of the medical expense that she had submitted, and they just – they didn't pay about $600 worth that they – on which they disputed causation. And that seems to be consistent with a subsequent Montana Supreme Court case, Shilhanek, that suggests that they have a duty to prepay undisputed amounts, but they would not have a duty to prepay the part they disputed. Correct. So you're left with, well, okay, they did comply with Ridley and Shilhanek eventually, but they first attempted to have her sign this form. Is that the gist of it? Yes. The medical bills in this case are broken down into two. The ones they leveraged for what was a short period of time, a month. They leveraged for that period of time. They withheld the money. They tried to make her sign the form. She refused, and so they gave in, but not on all the medical bills. So on those, they leveraged for a short period of time, and the facts really, and the evidence at trial, the jury gets to decide how much damage was caused by that short period of leveraging. That is the – I'm trying to understand a damage theory for attempted leveraging, because they really didn't do the leveraging when they paid the money. Correct. Attempting to – for the one portion, but they clearly leveraged the rest and never paid them, even when their own IME's physician told them that those medical bills were caused by – But they have a dispute on that. They had the treating physician, the chiropractor, their own nurse case manager, and their own claims she has a dispute, but she has no basis for that. Everybody's telling her consistently those medical bills were caused by the accident, and they just refused to pay them. This is for the $648. Correct. The damage theory for all of this is that the idea of attempted leveraging is an oxymoron. It doesn't exist. You cannot attempt to leverage. It's like attempting to speak. You're either doing it or you're not. Clearly, in this case, Safeco was leveraging. They were leveraging in the beginning and gave in when the attorney made them, and on some of the medical bills, they maintained their position, no matter how many doctors told them, including doctors they hired to pay those bills, that they weren't going to do it. The reason why they did it is because the evidence at trial underscored that this really should be a class action. They, in response to Ridley, went out and asked for three legal opinions. Can we, if we're going to comply with Ridley, demand some concessions? Three of the letters, all three of the firms responded, and two of the firms told them, absolutely not. You cannot do this. That is an unequivocal duty, and the Supreme Court's made that clear. So they threw those two opinions away, and they held a meeting in Spokane, and they had a sort of a teaching seminar with all of the adjusters that were going to handle Montana claims, and told them, we're going to do this. This is our new practice. You're going to try to get it. And they got two opinions saying they can't do it, and one that said they could? Correct. And so they discarded the two that said they can't do it, and they implemented on a company-wide basis, and not just Safeco National. The motion to amend for the class claims included all of the companies that were adjusted out of that office. It included American States and maybe a half a dozen other Safeco companies, because they're all adjusted by a unified group of adjusters in Spokane. And despite the two letters telling them not to, they implemented. Now, Malloy – Judge Malloy asked when we were – the motion to dismiss the claim for punitive damages was raised. He asked a fairly poignant question, because it really was the issue. He says this. I think you have enough evidence in the record to get a question of leveraging. Does leveraging alone get you punitive damages? And I think the answer to that, and it's a matter of law, the answer is yes, because you can – although I firmly believe you cannot attempt to leverage, you're either going to do it or you're not, just like speeding. You can think about it, but if you actually engage in an activity, you're either doing it or you're not doing it. Under Montana law, can a plaintiff get punitive damages without proof of some dollar amount of other damage, economic damage or loss? I think the requirement – In other words, you get punitive damage for the insult. I think you can get punitive damages if you show any general damage, especially. You have to show that – You have to have some dollar amount of general damage. Sure. And it's conceded in this case there was at least that $648. Now, the adjuster, Angela Berry for Safeco, said that she considered that in her ultimate settlement. But we know that's not true, and that evidence came out of trial, because she was gone, and so her supervisor wrote down on a piece of paper, and it's part of Exhibit 500, how she was going to value the case, and she wrote each line item down up to the amount of the settlement offer. Well, didn't the settlement, though, involve a waiver of all damages from the initial problem, and just preserve claims for bad faith or – Yes. And that's how you leverage. You make people agree to take a sum of money, and irregardless of whether they follow the law or not, they're going to give up the claim in return for a lump sum of money. When they say prompt, fair and equitable, and attempting to do it, that means it has to be timely. But I think that the equitable for this insurance bad faith, the statutory bad faith cases, I think it's clear that equitable, they haven't made it – I don't think the legislature made clear what they meant by fair and equitable, but I think in this case you can say clearly the final settlement was not equitable, because they still, even after their own IME physician told them that she had these medical bills that needed to be paid because of this accident, they still refused to include that in the settlement. This was a systematic practice to make money, and they stuck to their guns, even with the attorney's involvement in this case. And the evidence showed at trial that they clearly did create an industry-wide practice for their group of insurance companies. What are her damages, at least the way I'm looking at it, once they pay her even though she won't sign the form, it kind of limits what she can complain about. But I take it you say that was wrongful to even ask her to sign the form. And wrongful to withhold the medical bills. Which there may or may not be a legitimate dispute on, but in any event, clearly wrongful is a matter of law to ask her to sign it in the first place, you say, right? Correct. So what are her – she claims emotional distress from that. And the unpaid medical bills, her credit report. And actually the Supreme Court addressed that specific issue. What if the injuries are really minor? What if we're talking about a few hundred dollars? And the quote out of Ridley is, medical expenses from even minor injuries can be devastating to a family of average income. And I think the evidence at trial was clear that she was not somebody of even average income. And the inability to them – what it does is it affects your credit, and there was evidence that it did that in this case. It affects your ability naturally to get ongoing treatment, because as soon as the doctors aren't being paid, what we know is how much the medical expenses cost given the attempts to leverage. What we don't know is how much her medical bills would have been if they would have paid them on time, and she would have got the treatment the doctors wanted to give. Apart from punitive damages, what was her evidence of actual damages? The $648, the damage to her credit report. She talked about the problems of having those people – Emotional distress. Did she put a figure on that in your proof of trial? We did not get to – no, we didn't ask the jury for any amount of money at the point it was dismissed. The question of punitives and does leveraging alone get you punitive damages, we think the answer as a matter of law is a clear yes, and here's why. Even if we concede the idea that there's some theory how you could attempt to leverage without actually engaging in the activity, that, as a matter of law, is clearly not compliance with subsection 6, which is it requires you to attempt in good faith to effectuate a prompt, fair and equitable settlement. Now, Judge Malloy reiterates, and he says it repeatedly, that clearly they were attempting to leverage, and they were attempting to do that on a system-wide basis, somewhat unsuccessful, but clearly that, by definition, is not attempting in good faith to effectuate a prompt, fair and equitable settlement. Dr. Angel, how much time did you want to save for Mr. Blakely? Five minutes. Okay. Then you're still rolling. The malice in Montana requires that somebody act in conscious or intentional disregard of a high likelihood of injury. When insurers try to leverage, especially medical bills, they know that it's going to have a harmful effect. The reality is, and I think it's consistent with all people that are trying to get medical treatment, when the bills aren't paid in a timely fashion, it affects the treatment. That's the expectation of the insurance companies, and that's a reasonably likely thing to happen in every case. If the doctor's not getting paid, they're going to cut you off of the course of your treatment. Am I right that the case was dismissed, the directive verdict was given after the close of the plaintiff's evidence? Correct. So now, wouldn't the plaintiff, would the plaintiff have been required to set a figure before the jury on emotional distress damage or actual compensatory damages? How would that work under your view of the case? I think at that point, for the jury to have an opportunity to value the general damages, there had to have been some proof of special damages, and there were. The plaintiff had been paid medical bills, and some proof of general damage, and she talked about how it affected her, the credit. She gave evidence of that, right? Yes. You would have, you might or might not in your argument have told the jury what it was worth, or they could just set a figure? Correct. I am confident that in closing, we would have proposed a figure for the jury based on all of the evidence. The real issues, because there are five issues briefed to the court, does she get a chance to have a jury value her damages, both the special proof at trial and the general, and is this a case for class certification? And it's our position that that evidence at trial really underscored how widespread this practice was, or the likelihood that it was widespread, which was not disproven by the insurance company. So we think that the, we would request that the court remand it consistent with all of Judge Molloy's statements, including that, and it was said repeatedly four or five different times he said that, and remand it for the class. You think we should have gone to the, assuming we didn't think the, that it was an abuse of discretion not to certify a class, you would say even in that case, your client was entitled to have a jury decide her damages from the leveraging? Correct. And a claim for punitive damages? Correct. Now, okay. Because the clear and convincing evidence of the attempt to leverage is clear and convincing evidence of a failure to attempt in good faith to effectuate a settlement. Okay. Thank you. I guess you want to save some time for Mr. Blake later. Thank you. All right. We'll now hear from Ms. Matovich. Very good, Your Honor. I would write now. Thank you. We appreciate your coming to illuminate us today. You've got 20 minutes. I hope at some point, though, you'll, at least from my perspective, address why the evidence wasn't sufficient on this leveraging claim. And I hope you'll also talk about the class certification issues. May it please the Court, counsel. With me at the table today is my co-counsel in this case, Jeffrey Keller. We tried the case together. As the Court is aware, this case involves the mailing of an advance pay agreement by Safeco National to Ms. Bourget. When she refused to sign it, they promptly paid the remaining medical bills that were not in dispute. There were no further discussions about the form thereafter. They did not refuse to pay her medicals because she refused to sign the form. They refused to pay the remaining $600 in medicals, as the Court noted, because of disputes with causation. Let's just let me back up for a minute. Let's assume that the causation dispute is totally bona fide and that there was no obligation under Shilhannock to pay that part. Isn't it, or let me just say, is it still a violation of the Montana statute to have this form be signed? I do not believe so, Your Honor. Putting aside damages, is that a leveraging violation? I do not believe so, Your Honor. I refer to the language of Montana's Unparentage Rape Practices Act, which follows and is patterned after the Uniform Act. Section 13 of statutory 33-18-201 says no person may fail to promptly settle claims if liability has become reasonably clear under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage. In this case, there was no refusal to pay a portion of the coverage that was admittedly owed. The demand... What do you mean when there was no refusal after she rejected the form? Is that what you mean, that you still made a prompt payment? There was, I believe that there was prompt payment even from the date of the initial offer. The form was mailed to her on February 20th of 1998. But if you mail someone a form and say, sign this form if you want the payment, doesn't that imply if you don't sign the form, you're not going to get the payment? Well, on February 25th, Your Honor, just five days later, her attorney advised Safeco National that she would not sign the form. And on March 14th, within three weeks, a one-time advance payment was made for all of the medicals that had been... I understand that completely. So, I mean, to me, it seems like that would limit, if it was wrong to send her the form in the first place, that would certainly limit any damages from it. But it doesn't totally answer, in my mind at least, whether it was wrong to ask her to sign the form. Well, our statute also requires, Your Honor, that there be actual damages in addition to a violation of the statute, as you pointed out in your questions to appellant's counsel. In this case, the trial court felt, and I believe that there is substantial evidence to support that understanding, that the three-week time period between the demand for payment and the mailing of the check for the $2,759 did not constitute an attempt to leverage. There was disputed evidence as to whether or not the mailing of the form was a precondition to payment of any medical expenses. Ms. Breguet testified... Can you get the microphone closer to you? Is that better, Your Honor? It is. Thank you. Ms. Breguet testified that or Ms. Breguet's attorney testified that he was told that there was a requirement that the form be executed before monies were advanced. Ms. Angela Berry Hunter testified that she did not make any such representation. So on that point, the evidence was in dispute. Maybe I misunderstand what's going on here. But after a certain period of time, I thought she settled all claims for $12,000. That is correct, Your Honor. So what's the fight about? Has that settlement taken care of everything? The settlement only released the insured in this case. They reserved their claims against Safeco National. And the claims against Safeco National, as we understand them, include the sending of the advance payment form to Ms. Breguet prior to the advancing of any medicals. Following her refusal to sign the form, the company sent most of the money for the medical expenses. It sent all the money for those medical expenses for which there was no dispute as to causation. There was a significant dispute as to causation, contrary to appellant's argument, as to the remaining $600. There was – it was a very low-impact accident. There was a report from an accident reconstructionist that said that the impact could at most be likened to someone sitting down hard in a chair. There were photographs that showed a mere scratch to the insurance vehicle, a broken or a cracked light on the plaintiff's vehicle. Property damages totaled $315. Significantly, the individual that was identified as the plaintiff's treating physician or treating medical provider was a chiropractor who had telephoned the company before the demand for advance payment was made and said that he had discharged the plaintiff within three weeks of the accident because he did not believe that her subjective complaints met her objective symptoms and that her demeanor changed after she hired an attorney and someone told her that she had whiplash. There was also a nurse review of the file. The chiropractor's notes were admitted as part of the record. They're found in volume two of our excerpts at page 302 that describe the information that the insurance company had. I think significantly from a leveraging perspective, Judge Gold, is that there is no evidence that they failed to pay any part of the claim under one portion to influence settlement under the rest. They paid the portion of advance nets. There was no further discussion of the form at any point. About a month later on April 17th, a demand for full and final settlement in the amount of $20,000 was made. Thereafter, there was some more additional investigation that resulted in the receipt of an IME, resulted in the provision of other medical records. It resulted in an evaluation. And within six months, the entire claim was settled for $12,000. And the evidence that is in the court's record indicates that that settlement included the remaining $600 of medical treatments. To cover, as I read it, it covered all claims relating to the initial accident. So it would have covered those disputed medical expenses, but it expressly reserved claims against the insurance company for bad faith or leveraging or whatever. That is correct, Your Honor. Correct. And that's why we're here. That's why we're here. The question is, I guess it seems to me, two questions. One is, was the proposal to sign the form a leveraging violation? And then if the company later made payment despite that, when there was a refusal, is there any damage from that? And should the class be certified? Can they claim punitives? You know, it's a hard – I find some of the issues difficult. How about if you would please address at some point before you finish the class certification issues? Let me address that right now, Your Honor. Let me just ask the question again. This may go to my misunderstanding, but when you settled the claim for $12,000, didn't that also settle the question about the class? No, Your Honor. The settlement – the $12,000 settlement was solely of the underlying action against Alice Gilbert, who was Safeco Nationals insured. It was subsequent to that settlement that the plaintiff, Burgett, filed a claim against Safeco National and attempted to join in that claim all other members that were described in her class description who may have had similar claims against Safeco National, not against Ms. Gilbert. Similar claims in the sense they were given some form to sign and there was some leveraging or attempted leveraging. Correct. It's a very broad class description, Your Honor, which is one of the reasons why we contend that the district court did not abuse its discretion in denying class certification. The court ruled in the competing motions for certification and for denial of certification that the plaintiff had failed to meet the threshold requirements of Rule 23A of the Federal Rules of Civil Procedure. Of those four requirements, the court found that the plaintiff had failed to meet a burden on numerosity, on commonality, and on typicality. It did not address adequacy of representation. The discovery results that were reached in this case indicated that at most, in addition to Ms. Burgett, there were three other definite files in which the advance pay form had been utilized. Those, including Ms. Burgett's, total four claims. So the district court said there's not sufficient numerosity. If the form was used, what was said might have been different. And it's hard to say. Everybody's got common claims on this kind of leveraging claim or whatever. Correct. The court found that resolving all inferences in favor of the plaintiff, there might have been as many as seven times in which the claim was used. Those individuals were identifiable. There is not sufficient number to meet the numerosity requirement, nor was Joinder impracticable. Okay. So, and also the court never reached the Rule 23B issues. They did not reach the Rule 23B issues, although they addressed commonality in terms of the questions of law and fact that were alleged to be common among the class members. And they found that it would require such an individualized set of proof for each member as to one, whether a form had been used, whether some other method of leveraging had been used, whether the method was proper or improper, whether the individual had causation disputes or did not have causation disputes, what the individual's medical history was, what the treatment history was, what the expenses were, what damages, if any, were suffered as a result of the leveraging, that commonality could not be met. Okay. I'd like to briefly address in his opening statement, counsel spoke of a single motion for directed verdict as to punitives. The transcript will speak for itself, but we would refer the court to page 260 of appellant's excerpts in which we moved both for a directed verdict on the punitive issues, as well as a directed verdict on the unfair trade practice allegations. It was a dual motion. How do you deal with the judge's comment, which obviously the appellants, you know, make that prominent in their briefing and argument, that the judge at one point says, I think there's enough evidence to go to a jury on leveraging? I would interpret that in several ways, Your Honor. Number one, it was stated during the argument on the Rule 50 directed verdict motion. The judge was engaging counsel in conversation, and I would view it in one hand assuming there was an attempt to leveraging, or I think there's enough evidence to go to the issue on leveraging because they attempted to use this form. When he went back into chambers and took a recess, looked at the evidence that he maintains on real time throughout the course of the trial, looked at the statute, that he determined that there really was not evidence of leveraging, and that an attempt to leverage would not result in any damages. Well, anyone who tries cases or goes to hearings knows that judges sometimes say something during an argument and then think further on it and say something else. But is it relevant at all to our assessment of the evidence? In other words, I guess I would think that the most important thing is, was there sufficient evidence of leveraging? Whether the court said, I don't think there is, or said, I think there is. Your Honor, I do not believe that there is sufficient evidence of leveraging in this file. We often see cases where insurance carriers will ask a litigant or a claimant for a release. If the litigant refuses, they proceed to make payment anyway. Is that a violation of the statute? I think requests and discussion can be had as long as a firm position is not taken. When the form was sent to Ms. Perget, was it with a, and maybe I should know this from the record, but you could help me out, was it with a transmittal or a verbal request? In other words, what exactly was she told when the form was first tendered to her? There was no transmittal letter, Your Honor, and the evidence is disputed as to what was said. Okay, but what was then, what was her evidence of what was said? Because I guess as to whether she go to a jury, whether a verdict should be directed, one would have to look at her evidence. Her attorney testified that he was told there would be no advance payment unless the form was signed. Why isn't that, I mean, putting aside whether damages are nominal or small or big casino, why isn't her attorney's evidence, if it's admissible, sufficient to go to a jury? Because you still have to have actual damage, Your Honor, and there was no evidence in any of this record as to actual damage that the plaintiff suffered as a result of the insurance carrier's action in this matter. Okay. What about her testimony about her anxiety and possible credit problems and so on? Wouldn't that be accurate? There actually was no evidence, no specific evidence as to credit problems, Your Honor. There was one collection notice which was submitted into evidence, which was the only collection notice that was produced, which predated the time of the accident. It was for medical bills that had been incurred prior to the time of the accident. There was no testimony about damage to credit reputation. But she did give testimony that she was distressed, right? She said that she was under stress, yes. Well, let me just, I mean, this theory of American law may be right or wrong, but if the insurance company had said, we agree we violated the leveraging statute, but we corrected our error quickly when we made the payment after three weeks, we don't think there are any damages. And she says, well, I'll tell you, it's no big deal in terms of economics, but I was really distressed. I couldn't sleep. I was bothered by this demand. Wouldn't a jury be allowed to give her some, you know, X amount of damages for that? Under Montana law, Your Honor, an award of damages for emotional distress requires evidence of some emotional distress or damage that goes beyond that what an ordinary person would be expected to bear. That's one point, Your Honor. In this case, she said she was under stress. There was no further elaboration of that from the plaintiff in her testimony. In addition, the stress that was allegedly occurred was not made known to Safeco at that time. Safeco had no knowledge that she was under any sort of financial duress. When it took its recorded statement from her two weeks following the accident, she told them that she was unemployed. She at trial alleged that she was unemployed as a result of the accident, but that was not part of Safeco's filing, was not within Safeco's knowledge at the time. So they were unaware of any financial impact that might have been occurring. One other quick question. If if we were to determine that the jury should have been able to consider leveraging and whether there was adequate showing to give a damage award for emotional distress, would punitive damages be permissible? I mean, in other words, if you take what I just said as an assumption, would it follow that the jury could also consider if there was malice and a punitive should be awarded? And then I guess the secondary question is, has the Supreme Court State Farm or some recent Supreme Court jurisprudence kind of meant that any punitive damages couldn't exceed like compensatory damages in a case like this? Your Honor, we do not believe that punitive damages would be appropriate. In this case, the plaintiffs have alleged that punitive damages should be awarded solely because of a violation of the statute without more. The statute itself requires more. The language of the statute says that if a violation is found, and this is in Section 3318-242-1, that if a violation is found, a jury may award exemplary damages in accordance with the statute dealing with exemplaries, which is 27-1-221. There is also a case that was cited in our brief, Dease v. American National Fire Insurance Company, which also held that in order to recover punitive damages, you must find both a violation of the statute and evidence of actual malice and actual fraud. And in this case, there was no evidence of actual malice or actual fraud. In conclusion, Your Honor, we believe that the evidence in this case does not support a finding of an Unfair Trade Practices Act violation. The plaintiff has failed to provide any or produce any substantial evidence of a violation, and the standard that this Court follows requires a substantial, substantial evidence of a violation, not just a mere scintilla of evidence. There are conclusory allegations that were made which are not supported by the factual data before you and do not create a material issue of fact. The directed verdict and the denial of certification are both supported by the record under either a de novo or an abuse of discretion standard, and we would respectfully ask that the Court's decision be affirmed. Thank you very much. Thank you. Now we'll hear from Mr. Blakely, whose colleague, Mr. Angel, reserved a few minutes for him here. Thank you, Your Honor, may it please the Court. I'm Alan Blakely, and I see that my chatty colleague did not reserve too much time. I would like to respond to one question that you asked early on, Judge Gould, and that's with respect to whether the judge changed his mind, whether Judge Malloy changed his mind from the time he made this statement and the other statements that he made that we've cited in our brief when he came back and delivered his answer, his opinion. And I would say, no, he did not change his mind on the facts. What he did was change his mind on how they applied to the law. And I would ask you to take a look, not to just trust his finding of facts, but take a look at the transcript. Because Judge Malloy, and you'll find the same thing when you read the transcript, Judge Malloy found that there's evidence that came from the people at Safeco. They conceded in testimony, and I think arguably from the evidence, that they weren't about to pay the advance on the medicals unless she gave up those things listed. And that's on page 281, I think, of the transcript. But he was looking, or he was thinking about all the testimony of the Safeco people up to that time. And... That's when they first made the proposal, you mean? That's correct. That's correct. And that's why, Your Honor, I think it's very important that the Court not buy into the appellees, into Safeco's limiting view of this case. Safeco wants to say that this case was about one piece of paper sent to one poor, single mother in a small town in Montana. It was not about that. I would direct the Court's attention to our brief in support of Motion for Class Certification, which is part of the record. We filed it on November 15, 1999, after we had done a good bit of discovery. And we found that Safeco had entered into a course of seeing how they could get around Ridley with respect to everybody in Montana. The form, the one piece of paper, was one example. Well, how about, Matt, let's assume that we rule for you that a verdict should not have been directed on compensatory damages for leveraging. What's the evidence of malice? The evidence of malice... Well, they had opinions of one law firm saying you can't do it and another law firm that says you can. They had two law firms saying don't do it. Okay, but so what? If they had one that said they could, where's the malice? I think when you look at the testimony from their officials about the meetings in Spokane where they were coming up with this plan, I think that's where we find the malice. I would just... I see I only have 15 seconds left. I would ask you to consider very carefully the class certification and the way that it was pled and the way that the appellees purportedly looked for whether or not there were any violations. Let me let you take another half minute at least or a minute, address this. How do you show numerosity in a case such as this? I think the way we show numerosity is by electronic discovery. They used this computer system called Compass and they posted this form on Compass and gave everybody access to it. We have testimony, and that's where I was citing to in our brief on class certification. We have testimony that it was placed, it was available for anyone to use. We have conflicting testimony from their own people about how many times it was used, whether the form was ever sent back, whether they did other manifestations. There was a letter that was similar to the form that contained the same elements that they sent to some people. What we have on the record is that they did a manual search of paper and found four to seven instances of its use. We've taken you over your time. You've kept me too long. We appreciate your argument. The case will be submitted. We appreciate the excellent argument from counsel for both sides and appreciate your travel to Seattle to educate us. Thank you, Your Honor. The case is submitted.
judges: Lay , Goodwin, Gould